# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
Assigned on Briefs October 24, 2012

## JULIO VILLASANA v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Davidson County**
**No. 2006-D-3105      Mark Fishburn, Judge**

_____

**No. M2012-00518-CCA-R3-PC - Filed December 20, 2012**

_____

Petitioner, Julio Villasana, appeals the post-conviction court's denial of his petition for post-conviction relief. Petitioner was indicted by the Davidson County Grand Jury for two counts of aggravated vehicular homicide and one count of leaving the scene of an accident. Petitioner entered guilty pleas to one count of aggravated vehicular homicide, a Class A felony, and one count of leaving the scene of an accident resulting in death, a Class E felony. Following a sentencing hearing, Petitioner was sentenced by the trial court to the maximum sentence of 25 years for aggravated vehicular homicide and two years for leaving the scene of an accident. His sentences were ordered to run concurrently. This court affirmed Petitioner's sentence on direct appeal. In his post-conviction petition, Petitioner asserted that he was denied the effective assistance of counsel and that his pleas were involuntarily and unknowingly entered. The post-conviction court denied relief following a hearing. After a careful review of the record, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J. and D. KELLY THOMAS, JR., J., joined.

Ryan C. Caldwell, Nashville, Tennessee, for the appellant, Julio Villasana.

Robert E. Cooper, Jr., Attorney General and Reporter; Lacy Wilber, Assistant Attorney General; Victor S. (Torry) Johnson, III, District Attorney General; and Kyle Anderson, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

A summary of the facts underlying Petitioner's convictions and of the evidence presented at the sentencing hearing can be found in this court's opinion on direct appeal. *See State v. Julio Villasana*, No. M2007-01923-CCA-R3-CD, 2008 WL 2368911 (Tenn. Crim. App. at Nashville, filed June 10, 2008), *perm. app. denied* (Tenn., Dec. 8, 2008).

At the post-conviction hearing, Petitioner testified that his trial counsel advised him "[w]hen she started [his] case," that his "sentence would be a minimum of eight [years] and a maximum of twelve [years]." He also testified that trial counsel told him that he "was going to get twelve years maximum sentence because [the victim] was American . . . and because [Petitioner is] Mexican." Petitioner testified that trial counsel subsequently told him that his "sentence had gone from 15 to 25 years because [he] had been caught eleven times [by] immigration." He testified that he met with trial counsel "[l]ike five times, and the last time [was] when she told [him] to sign to accept 15 years."

Petitioner testified that trial counsel advised him that he had a right to a trial. He testified, "I didn't want to go to trial because I am guilty, I just want to receive a sentence that is legal." Petitioner added, "I never would have signed for 25 years." Petitioner testified that he spoke to trial counsel "a week before [entering his guilty pleas] and [he] signed the paper saying [he] could get 15 to 25 years." Petitioner acknowledged that he answered under oath at the guilty plea hearing that he understood that the sentencing range was 15 to 25 years. Petitioner testified that he would not have pled guilty if he had known that he would be sentenced to 25 years.

On cross-examination, Petitioner testified that trial counsel told him that he could receive a sentence between 15 and 25 years but that trial counsel "told [him] the most would be 17" because the trial judge "was not a racist." Petitioner testified:

> [Assistant District Attorney]: So, when you plead [sic], you were aware that the judge could sentence you as high as 25 years, but you didn't think that he would, is that a correct understanding?
>
> [Petitioner]: Yes. I didn't think he would do that because [trial counsel] told me that the most would be 17.
>
> [Assistant District Attorney]: But you were aware that the Judge had the power to give you 25 if he wanted to, correct?
>
> [Petitioner]: Yes.

[Assistant District Attorney]: And [trial counsel] advised you that the judge was not a racist, is that correct?

[Petitioner]: Yes, sir.

[Assistant District Attorney]: Do you have any evidence today that that was incorrect, that in fact the judge is a racist?

[Petitioner]: No, he's not a racist, but – well he gave me 25 years.

[Assistant District Attorney]: But you understand he had the power to give you 25 years without thinking about your race, correct?

[Petitioner]: Yes, sir.

[Assistant District Attorney]: [Trial counsel] told you that you could have a trial, correct?

[Petitioner]: Yes, but she told me if I went to trial, I was going to lose for sure.

[Assistant District Attorney]: And you today have said you are guilty, correct?

[Petitioner]: Yes, sir.

Petitioner testified that he would not have been pleased with the minimum sentence of 15 years either "because in the prison where [he is] there's a lot of cases worse than [his] and all of them have 8 [years] at 30 [percent release eligibility] or 9 [years] at 30." Petitioner acknowledged that his prior convictions for driving under the influence and his high blood alcohol content were considered in enhancing his sentence.

Petitioner's trial counsel testified that "we had an offer from the State that I did not think was a fair offer" and that she encouraged Petitioner to have a sentencing hearing. Trial counsel testified, "[t]here were obviously circumstances that made it aggravated" but that she believed Petitioner's "admirable work history" would "weigh heavily" in his favor. Trial counsel testified that Petitioner's recollection of their conversations regarding whether to go to trial was "fairly accurate[,]" and she testified, "we did discuss him having a trial, but only sort of cursorily, he did not want one, it was clearly a bad idea, he would have lost." Trial counsel testified that the State's offer was a fixed sentence less than what he received at the sentencing hearing. The exact offer by the State was never mentioned during the post-

conviction proceedings. Trial counsel testified, "[i]n retrospect, there were things that occurred at the sentencing hearing that I had not anticipated, had I known all of those factors ahead of time I would have advised him differently about the State's offer." Specifically, trial counsel testified that Special Agent Dickhaus testified about Petitioner's "immigration issues." Trial counsel recalled that she "received a continuance of a couple of hours" to review information regarding Petitioner's prior deportations. Trial counsel objected to Agent Dickhaus' testimony as it related to enhancement of Petitioner's sentence. She testified that she did not receive the information prior to the sentencing hearing. Trial counsel testified that she explained to Petitioner that the sentencing range was 15 to 25 years and that she "hope[d] that [they] could get it down to maybe 17." She testified that she advised Petitioner that the maximum allowable sentence was 25 years, but she "didn't think it was likely from where [she] sat[.]"

*Analysis*

Petitioner argues that his trial counsel was ineffective by incorrectly advising him as to the applicable sentencing range, and therefore, his guilty plea was unknowing and involuntary. We have reviewed the record and conclude Petitioner has not demonstrated that the trial court erred in denying his petition.

We review ineffective assistance of counsel claims arising out of guilty pleas under the well-established standard set out in *Hill v. Lockhart*, 474 U.S. 52, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985). In *Hill*, the United States Supreme Court addressed the issue of alleged involuntary guilty pleas resulting from erroneous or negligent advice by trial counsel and merged the *Strickland* test for ineffective assistance with the traditional requirements for a valid guilty plea. *Hill*, 474 U.S. at 59, 106 S. Ct. at 370. The *Strickland* test provides that, to prevail on a claim of ineffective counsel, the defendant must establish that (1) the services rendered by counsel were deficient and (2) he/she was prejudiced by the deficient performance. *See Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984); *Cooper v. State*, 849 S.W.2d 744, 746 (Tenn. 1993). As applied to guilty pleas, the first prong, deficient performance remains the same, i.e., counsel failed to exercise the customary skill and diligence that reasonably competent counsel would provide under similar circumstances. *See Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975); *Walton v. State*, 966 S.W.2d 54-55 (Tenn. Crim. App. 1997). However, the prejudice requirement focuses on whether counsel's ineffective performance affected the outcome of the plea process. *See Hill*, 474 U.S. at 58, 106 S. Ct. at 370. In other words, in order to satisfy the prejudice requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial. *Id*.; *see also Walton*, 966 S.W.2d at 55.

Generally, the "prejudice" inquiry will closely resemble the inquiry courts make in reviewing ineffective assistance challenges to convictions obtained through a trial. *See Hill*, 474 U.S. at 59, 106 S. Ct. at 370. Indeed, the focus is not only upon the actual "error" committed by counsel, but whether counsel acted competently in that (1) counsel would have changed his recommendation as to the plea or (2) whether competent performance would likely have changed the outcome of a trial. *See Hill*, 474 U.S. at 59, 106 S. Ct. at 370-71.

In the present case, the post-conviction court concluded that Petitioner received the competent assistance of counsel and, consequently, entered his plea knowingly and voluntarily. A trial court's findings of fact in a post-conviction hearing are conclusive on appeal unless the evidence in the record preponderates against those findings. *See Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997); *Clenny v. State*, 576 S.W.2d 12, 14 (Tenn. Crim. App. 1978), cert. denied.

The trial court in this case heard the testimony of both trial counsel and Petitioner and made the following findings:

> During the hearing, Petitioner stated that [trial counsel] visited him about five times prior to the resolution of his case. He stated that he was fully aware of his right to a trial, but knowingly waived such right because he was guilty of the charges. Petitioner also contends that while he and [trial counsel] hoped for a lesser sentence, he was fully aware that the maximum sentence which could be imposed by this Court was twenty-five (25) years. Petitioner was aware that his prior deportations could increase the sentence [and] were a relevant sentencing factor. Both he and [trial counsel] were arguing for a maximum sentence of seventeen (17) years.

> . . . . On the day of sentencing, [trial counsel] made the court aware that she was unaware of Petitioner's [f]ederal [r]ecord because it was not included in discovery or in a notice to enhance punishment because of the convictions. She also asked for a possible continuance to prepare. However, the Court acknowledging that there were between twenty (20) to twenty-five (25) family, friends and co-workers of the deceased victim present, decided to give [trial counsel] until 1:00PM that day for her to review the certified copies of convictions, speak to Special Agent Dickhaus and discuss issues with Petitioner.

> . . . .

> Petitioner also claims that had he known the maximum sentence would be imposed[,] he would have not [sic] entered an open plea.

. . . .

Petitioner speaks Spanish, with limited, if no, understanding of the English [language. [Trial counsel] submitted a plea petition in Spanish and one in English. Petitioner stated that when he plead [sic], he was fully aware that the maximum sentence he could receive was twenty-five (25) years.

[Trial counsel] stated that she fully informed Petitioner of [the] maximum sentence, and while being fully aware of that, both she and Petitioner hoped for a lesser sentence. She also stated that Petitioner was informed that if he entered an open plea, his sentence could be less [than] or greater than what was originally offered by the State.

(footnotes and citations omitted).

Finally, the post-conviction court found that Petitioner was advised of the applicable sentencing range for both offenses at the guilty plea hearing and that Petitioner informed the court that "he was guilty 'but would like to have the minimum.'" The court concluded that Petitioner's pleas were voluntarily and knowingly entered.

Our review of the record shows that Petitioner clearly has not demonstrated that the evidence in the record preponderates against the post-conviction court's findings. Petitioner acknowledged that he was guilty of the offenses, that he did not want to have a trial, and that trial counsel informed him of the correct sentencing range. The trial court asked Petitioner at the guilty plea hearing whether he understood that "the possible sentence for the aggravated vehicular homicide will be between 15 and 25 years, [and] the possible sentence for leaving the scene of the accident will be 1 to 2 years." Petitioner answered that he understood. That Petitioner hoped for a lesser sentence does not invalidate his guilty pleas as unknowing and involuntary. Trial counsel's advice to Petitioner to reject the State's plea offer and enter open pleas was an informed and strategic decision, which this court will not second-guess on appeal. *See Henley v. State*, 960 S.W.2d 572, 579 (Tenn. 1997). Therefore, we affirm the order denying Petitioner's petition for post-conviction relief.

**CONCLUSION**

The judgment of the post-conviction court is affirmed.

_____
THOMAS T. WOODALL, JUDGE